UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KAREN YAROSH, | : | CIVIL ACTION NO. |
|     Plaintiff, | : | 3:14-CV-1948 (JCH) |
| | : | |
| v. | : | |
| | : | |
| AARON TODRIN et al., | : | |
|     Defendants. | : | MARCH 20, 2015 |
| | : | |

**RULING RE: EMERGENCY APPLICATION TO DISCHARGE NOTICES OF LIS PENDENS PURSUANT TO C.G.S. § 52-325a (DOC. NO. 13)**

## I.   INTRODUCTION

This suit arises out of the termination of a business relationship between plaintiff Karen Yarosh and defendant Ray Malouin.[1]  The two carried on this business relationship at a property located at 249 Route 87 in Columbia, Connecticut ("the Subject Property" or "the Property), as to which Malouin held legal title, subject to a mortgage loan.  More recently, Malouin terminated the relationship; he is either in the process of selling, or has already sold, the Property.  The Third Amended Complaint states a claim for breach of contract against Malouin for his termination of the relationship (Count Two); a claim of tortious interference with business expectancies against Malouin and all remaining defendants (who, Yarosh alleges, either induced Malouin to terminate his business relationship with Yarosh or induced him to sell the Property, or both) (Count One); a claim of negligent infliction of emotional distress against all defendants (Count Four); and a claim of unjust enrichment against Malouin

---

[1] The facts given here are taken from the Third Amended Complaint (Doc. No. 15), reading the facts in the light most favorable to the plaintiff.

1

and the individuals who Yarosh alleges are purchasing or have purchased the Property (Count Three).

Yarosh filed this suit on December 23, 2014.  See Complaint (Doc. No. 1).  Three notices of lis pendens making reference to this suit have been recorded—one on or about December 22, 2014; a second on or about December 26, 2014, and a third on or about January 14.  See Emergency Application to Discharge Notices of Lis Pendens Pursuant to C.G.S. § 52-325a ("Discharge Application") (Doc. No. 13) ¶ 3; Exh. B to Discharge Application (Doc. No. 13-1 at 3) (first notice); Exh. C to Discharge Application (Doc. No. 13-1 at 7) (second notice); Exh. D to Discharge Application (Doc. No. 13-1 at 12) (third notice).[2]

On February 19, 2015, the defendants moved for an order discharging the three notices of lis pendens.  See Discharge Application.  On March 16, 2015, this court held a hearing regarding the Motion.

## II. DISCUSSION

### A. Failure to show probable cause to sustain validity of action

A court may "order [a] notice of lis pendens discharged of record if . . . probable cause to sustain the validity of the plaintiff's claim is not established" by the party who has recorded the notice.  Conn. Gen. Stat. § 52-325b.  "Probable cause" is

> a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a [person] of ordinary caution, prudence and

---

[2] The second and third notices give identifying information for this case, including the docket number, that unmistakably identify it.  The first notice also identifies this case by the proper parties and the court ("Federal District Court of the District of Connecticut"), but gives a nonexistent and/or incorrect docket number: "2:14-cv-019X7" (the 'X' represents a digit that is illegible on the copy of the notice filed with the court by the defendant as an exhibit to its Discharge Application.  No other suits appear to have been filed by any plaintiff with the surname "Yarosh" in this court in the year 2014.  The court thus concludes that the notice can only refer to the present suit.

judgment, under the circumstances, in entertaining it.  Probable cause is a flexible common sense standard. It does not demand that a belief be correct or more likely true than false.

Cadle Co. v. Gabel, 69 Conn. App. 279, 287 (2002).

Even assuming that she has probable cause to believe every fact that she alleges in the Third Amended Complaint, Yarosh has not established "the facts essential under the law for the action" because the facts as pled actually support the conclusion that the posited basis for subject-matter jurisdiction, to wit, diversity jurisdiction, see 28 U.S.C. § 1332, is lacking.

Section 1332 of title 28 of the United States Code confers "diversity jurisdiction" on the federal district courts, allowing them to hear certain classes of cases.  One of the requirements for diversity jurisdiction is "'complete diversity,' i.e. [that] all plaintiffs [are] citizens of states diverse from those of all defendants."  Pa. Pub. Sch. Employees' Ret. Sys. v. Morgan Stanley & Co., Inc., 772 F.3d 111, 118 (2d Cir. 2014).  "[C]omplete diversity of all parties is an absolute, bright-line prerequisite to [diversity] jurisdiction." Id. at 119.

Diversity of citizenship is determined as of the time of the filing of the original Complaint.  See LeBlanc v. Cleveland, 248 F.3d 95, 99 (2d Cir. 2001).  In her original Complaint, the plaintiff alleges not only that she herself is a Connecticut citizen, but also that Ray Malouin, who is named in every Count in the Third Amended Complaint, lived in Connecticut on December 23, 2014, at the time she filed this suit.  See Complaint (Doc. No. 1) ¶ 5 ("Ray Malouin currently resides at the subject property, but is in the process of moving to Tennessee."); see also Third Amended Complaint ¶ 5 ("Defendant Ray Malouin formerly resided at the subject property until the end of 2014, but now lives

at 3018 South Allen Street, Baxter, TN 38544."). Absent further allegations, these facts indicate, and the court can only conclude, that Malouin was a citizen of Connecticut at the time of the filing of this suit. See Palazzo ex rel. Delmage v. Corio, 232 F.3d 38, 42 (2d Cir. 2000) ("To effect a change of domicile, two things are indispensable: First, residence in a new domicil; and, second, the intention to remain there." (internal quotation marks omitted; emphasis added)).

Nor can the court discern any reason why Malouin would fall into any exception to the complete diversity rule, even if some other defendant might.[3] The only cases to which the plaintiff points to show that some exception to this rule might apply here are Rose v. Giamatti, 721 F. Supp. 906 (S.D. Ohio 1989) and Parks v. Noisivision, No. 04-73653, 2004 WL 3217781 (E.D. Mich. Dec. 15, 2004). (Yarosh actually cited these cases with respect to arguments regarding three other defendants whom she has now dismissed. See discussion n.3 supra.) As potentially relevant here, these cases only stand for the propositions that "a federal court must disregard nominal or formal parties

---

[3] The plaintiff also alleged that several other defendants (Eric's Landscaping and Tree Service, LLC; Eric Person, Jr.; and Genovena (Genoveva) Padilla-Person), who are implicated in three of the four Counts, are Connecticut citizens. See Third Amended Complaint ¶¶ 4 (plaintiff), 6 (defendants). Yarosh's continued maintenance of suit against these parties would be grounds for finding lack of subject-matter jurisdiction and thus also lack of probable cause and ultimately reason to discharge the notices of lis pendens. The Third Amended Complaint alleges that the nondiverse defendants have taken actions over and above those of the nondiverse defendants that make these nondiverse defendants liable to the plaintiff. Accordingly, the allegations in the Third Amended Complaint establish that they are the "real parties to the controversy," and the Navarro exception is inapplicable here. See discussion of Navarro infra.
 However, after the hearing on the Discharge Application, Yarosh filed a "Notice of Voluntary Dismissal" of these defendants from the suit. See Notice of Voluntary Dismissal (Doc. No. 39). Treating this Notice as a Motion to Amend the Third Amended Complaint, see Gronholz v. Sears, Roebuck and Co., 836 F.2d 515, 516–19 (Fed. Cir. 1987), the court grants the Motion and dismisses these three plaintiffs from the action, see E.R. Squibb & Sons, Inc. v. Lloyd's & Cos., 241 F.3d 154 (2d Cir. 2001) (permitting amendment to cure jurisdictional defect). Moreover, because the dismissal of these defendants eliminates the only ground that the defendants offer for dismissing the suit in their Motion to Dismiss (Doc. No. 32), that Motion is terminated as moot, as is the plaintiff's Motion for Extension of Time to File Objection to Defendant's Motion to Dismiss (Doc. No. 38).

and rest jurisdiction only upon the citizenship of real parties to the controversy," Navarro Sav. Ass'n v. Lee, 446 U.S. 458, 461 (1980), and that the real parties to a controversy are those whose "distinctive rights and duties" (rather than those merely flowing from those of other parties) are at issue in the case, id. at 465. Malouin is indisputably a real party to this controversy: all of the plaintiff's allegations appear to involve, or even focus on, him and his actions.

The plaintiff has not established "probable cause to sustain the validity of [her] claim[s]," because the court lacks jurisdiction. Thus, the notices of lis pendens are invalid and must be discharged.

B.  <u>Failure to show that action is intended to affect title to real property</u>

A notice of lis pendens must also be discharged if it is recorded with reference to an "action . . . which is not intended to affect real property." Conn. Gen. Stat. § 52-325d. The court concludes from the Third Amended Complaint that this action is not one "intended to affect real property." This conclusion provides an independently sufficient reason that the notices of lis pendens must be discharged.

The Third Amended Complaint alleges, in relevant part,[4] that Yarosh "operate[d] an art and equine therapy business" at the Subject Property. Third Amended Complaint ¶ 4. Yarosh and Malouin "were engaged to be married approximately thirteen years ago and cohabited for most of that time." Id. ¶ 9. "Beginning on or about 2007, together they built a farm . . . with the mortgage on the [S]ubject [P]roperty taken in Ray Malouin's name." Id. ¶ 10. "Ray Malouin was responsible for the mortgage, while Ms.

---

[4] The plaintiff's Proposed Fourth Amended Complaint (Doc. No. 40-1) appears to allege substantially the same facts as those given here.

Yarosh was responsible for the home, gardens, and upkeep of property, [etc]." Id. ¶ 11. "Ray Malouin and Ms. Yarosh had an understanding, which developed after several years of their running the horse farm as a hobby, that they would build the business as a means of support [sic] his retirement from the home renovation business." Id. ¶ 12. "Ray Malouin [had an] oral agreement and implied contract with Ms. Yarosh, to contribute and participate with her in her art and equine therapy business by paying the mortgage, while she supplied the labor and maintained the animals, [etc]." Id. ¶ 25.

The defendants argue that the allegations in the Third Amended Complaint do not reflect that this action is "intended to affect real property." The court agrees: although the allegations reflect an agreement, the agreement appears only to relate to running a business, from which the court cannot further infer that there was an agreement to vest Yarosh with rights in the Subject Property. The Third Amended Complaint does not allege that Malouin bought the Subject Property at a time when he and Yarosh were cohabiting (rather, it refers to having "built a farm," id. ¶ 10), or that, when he did take title to the Subject Property, he took any actions that plausibly indicate that a contract relating to real estate was formed between the two.

Yarosh argues that "non-marital partnerships can rely on the civil courts in much the same manner as divorcing couples rely on the family courts when there is a situation involving equitable principles, as here, where Ms. Yarosh and Mr. Malouin were running a business and farm and sharing the expenses." Plaintiff's Second Memorandum in Opposition to Docket #13 Defendant's Emergency Motion to Discharge Notices of Lis Pendens Pursuant to C.G.S. 52-325a (Doc. No. 36) at 1–2. However,

6

Yarosh's vague reference to "equitable principles" and the cases she cites are unavailing.

The one Connecticut Supreme Court case that Yarosh cites for this proposition, Boland v. Catalano, 202 Conn. 333 (1987), does not support the conclusion that Yarosh advances. That case provides, "cohabitation alone does not create any contractual relationship or, unlike marriage, impose other legal duties upon the parties." Id. at 339. "Ordinary contract principles are not suspended, however, for unmarried parties living together . . . ." Id. Thus, if an express or implied contract between cohabiting parties exists, courts applying Connecticut law will enforce the contract. See id. at 340–41.

Yarosh does not allege that she and Malouin had any agreement, express or implied, whereby the Subject Property, as to which Malouin holds and/or held title, would be their joint property. The mere fact that, as she alleges, Yarosh contracted with Malouin to run a business on the Subject Property, does not suffice to reasonably permit the inference that Yarosh acquired contractual rights as to the real estate itself. And while her performing valuable services for Malouin may entitle her to money damages, that she performed these services on, or with respect to, the Subject Property does not, without more, state a claim for relief that involves an interest in real property.

The other cases that Yarosh cites, Burns v. Koellmer, 11 Conn. App. 375, 381 (1987) and Vibert v. Atchley, No. CV-930346622, at *2–*3 (Conn. Super. 1996), both reaffirm Boland, but nowhere indicate, let alone hold, that the facts of cohabiting or being involved in a business relationship that is carried on at certain premises creates rights in the premises by one who lives there without title to the property. Indeed, although these cases involved cohabiting couples, Yarosh does not point to any

lanugage in these cases that relief involving the recognition of rights in real estate would be appropriate, and the court can find no such statement.

Yarosh also argues that "it may be possible in Connecticut for even unsecured creditors to seek security in litigation by means of the lis pendens if the amount sought is a large amount, outside the homestead exemption, just as a pre-judgment remedy may pertain in such a case," see Memorandum in Support of Plaintiff's Objection to Defendants' Application for Emergency Hearing to Discharge Lis Pendens (Doc. No. 17) at 3–4 (citing Donegan v. Gardner, No. CV010085057S, 2001 WL 1266223 (Conn. Super. Oct. 5, 2001)).  Donegan, which Yarosh cites without pointing to any part of the opinion, does not support this conclusion.  That case in no way addressed the basis of the lis pendens, and only rejected a constitutional challenge to the lis pendens statute on a basis irrelevant to the present case.  See Donegan, 2001 WL 1266223, at *2–*3.  Moreover, if a party wishes to seek a prejudgment remedy, she is free to do so by following the applicable procedures.  See Conn. Gen. Stat. § 52-278a et seq. (providing, inter alia, that, except under special circumstances, before a court will grant a prejudgment remedy, the opposing party "shall have the right to appear and be heard at [a] hearing" at which the party seeking the prejudgment remedy must show probable cause that judgment will be rendered in her favor, Conn. Gen. Stat. § 52-278d).

### III.   CONCLUSION

The court "finds that [the] notice[s] never became effective [and thus] declar[es] that [they are] invalid and discharged . . . .  A certified copy of [this Ruling] may be recorded in the land records of the town in which the notice[s] of lis pendens w[ere] recorded."  Conn. Gen. Stat. § 52-325d; see also Conn. Gen. Stat. § 52-326.

The Discharge Application (Doc. No. 13) is **GRANTED**.

The Motion to Amend the Third Amended Complaint (Doc. No. 39), see n.3 supra, is **GRANTED** over objection. Eric's Landscaping and Tree Service, LLC; Eric Person, Jr.; and Genovena (Genoveva) Padilla-Person are hereby **DISMISSED** from this action.

In light of the foregoing, the Motion to Dismiss (Doc. No. 32) is **TERMINATED AS MOOT**. The Motion for Extension of Time to File Objection to Defendant's Motion to Dismiss (Doc. No. 38) is **TERMINATED AS MOOT**.

**SO ORDERED**.

Dated this 20th day of March 2015 at New Haven, Connecticut.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge